David J. Jordan (1751)
david.jordan@stoel.com
Wesley F. Harward (15623)
wesley.harward@stoel.com
STOEL RIVES LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT 84111
Telephone: 801.328.3131

*Attorneys for Defendant Corporation of the*
  *President of The Church of Jesus Christ of*
  *Latter-day Saints*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| LYNETTE COOK, RODNEY JAY VESSELS, JULIE TITTLE TAGGART,<br><br>Plaintiffs,<br><br>v.<br><br>CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole,<br><br>Defendant. | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 2:20-CV-00080-TS-PMW<br><br>The Honorable Ted Stewart<br>The Honorable Paul M. Warner |

Corporation of the President of The Church of Jesus Christ of Latter-day Saints (the "Church") submits this Reply Memorandum in Support of its Motion to

-1-

Dismiss (the "Motion").[1]  The Complaint fails to state a claim on which relief can be granted.  Because no amendment could cure the defects, the Complaint should be dismissed with prejudice.

## INTRODUCTION

Plaintiffs' Complaint asks this Court to do what the First Amendment plainly forbids:  interpret and weigh the Church's scriptures against the Church's teachings and practices.  At the heart of the Complaint are Plaintiffs' allegations that Church teachings and practices, including, for example, the building of temples and meetinghouses, the operation of its missionary program, the construction of a conference center, the building and operation of family history centers, and the operation of its educational institutions, violate precepts taught in the Book of Mormon.

Plaintiffs try to convert these plainly theological disputes into causes of action for fraud—with the alleged fraud being *professing* a belief in the Book of Mormon while allegedly acting in ways contrary to the Book of Mormon's

---

[1] The Church originally requested oral argument in its opening brief.  However, in light of Chief Judge Shelby's recent General Order 20-009 responding to the global Coronavirus pandemic by restricting live hearings, the Church withdraws its request for oral argument and believes its Motion can be decided on the papers.

teachings. But simply applying a "fraud" label to the claims does not cure the fatal constitutional defect. The First Amendment plainly forbids the government, including the judiciary, from wading into theological disputes. This Court may not interpret the Book of Mormon or opine on the true meaning of its teachings. Similarly, the Court may not adjudicate whether particular Church practices comply with the Church's scripture. Accordingly, Plaintiffs' claims are barred by the First Amendment and should be dismissed with prejudice.

## LEGAL STANDARD

"A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "[O]nly a complaint that states a *plausible* claim for relief survives a motion to dismiss." *Id*. at 679 (emphasis added). The Court cannot "supply additional facts" or "construct a legal theory" for the plaintiff where a justiciable claim has not been pleaded. *Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citation omitted).

## ARGUMENT

None of the arguments raised in Plaintiffs' Response to Defendant's Motion to Dismiss and Memorandum in Support (the "Response") avoid the constitutional defect in Plaintiffs' claims. The Response concedes that Plaintiffs' claims are

-3-

based on "the Church's religious tenets" but argue that this is "only in the context of the acts of fraud committed by the Church." Response at 3 (emphasis in original). Plaintiffs' argument misses the point. The First Amendment *absolutely* forbids the Court from weighing and interpreting religious doctrine. That protection is not lost just because Plaintiffs attempt to apply the label of "fraud."

The United States Supreme Court has consistently held that religious organizations have the "power to decide for themselves, free from state interference, matters of church government as well as those of *faith* and *doctrine*." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952) (emphasis added). That right derives from the First Amendment. *Id.* Civil courts cannot "engage in the forbidden process of interpreting and weighing church doctrine." *Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 451 (1969). Indeed, "the First Amendment forbids civil courts from playing" any role in determining "matters at the very core of a religion—the interpretation of particular church doctrines and the importance of those doctrines to the religion." *Id.* at 450.

Plaintiffs' allegations are clearly religious in nature. The gravamen of Plaintiffs' Complaint is its allegation that "[t]he doctrines, commandments, precepts, principles, and ordinances of the Church have nothing to do with what is

written in the [Book of Mormon].  In fact, the Church's doctrines are diametrically opposed to what is written in the [Book of Mormon]." Compl. ¶ 7.  Plaintiffs allege that the Church commits fraud by teaching that the Book of Mormon is the "keystone" of its religion, while failing to abide "by any of the [Book of Mormon]'s doctrines, precepts, and teachings." *Id.* ¶ 4 (emphasis in original).

To adjudicate Plaintiffs' claims, this Court would need to first interpret the Book of Mormon and then declare what its "doctrines, precepts, and teachings" are.  *Id.*  The Court would then need to weigh those teachings against the "doctrines, commandments, precepts, principles, and ordinances of the Church" to determine whether the Church is abiding by the Book of Mormon's true teachings.[2]  *Id.* ¶ 7.  And, if successful, Plaintiffs request that this Court issue an injunction ordering that "the Church and its leaders and members are prohibited from claiming the [Book of Mormon] is the 'keystone' of the religion of the Church" or that "the [Book of Mormon] proves or is evidence of the truthfulness of

---

[2] Plaintiffs suggest the types of disputes they believe should need to be adjudicated in this case.  They claim, for example, that the Church "falsely" teaches that certain "sacred temple ordinances . . . are necessary for exaltation." Compl. ¶ 5.  They claim that "genealogy work" performed by members of the Church is, in fact, "condemned in the [Book of Mormon]." *Id.* ¶ 14.  They argue that the Church's teachings regarding the redemption of the dead "is a doctrine that is clearly condemned in the [Book of Mormon]." *Id.* ¶ 17.  These disputes are plainly *religious* in nature and therefore improper subjects for judicial scrutiny.

the Church." *Id.* ¶¶ 178-79.  It is hard to conceive of a process that would more plainly violate the First Amendment.  Accordingly, the claims cannot be adjudicated and must be dismissed.

      Plaintiffs' Response largely ignores the Supreme Court precedent cited by the Church in its Motion.  Instead, the Response cites the California case *Molko v. Holy Spirit Association* for the proposition that "religious organizations may be sued for fraud and intentional infliction of emotional distress when they use deception and lies."[3]  Response at 4.  But that misunderstands the holding in *Molko*.  In that case, the court allowed a fraud claim against a religious organization where the alleged statement was secular and *not* one of religious doctrine.  762 P.2d 46 (Cal. 1988).  Specifically, the plaintiffs were approached by members of the Unification Church who lied to the plaintiffs and said they were

---

[3] Plaintiffs also cite *Sherbert v. Verner* as support for their contention that "religiously motivated fraud" is not protected.  374 U.S. 398 (1963).  But *Sherbert* is not a case about "religiously motivated fraud."  Response at 4.  Instead, it is a case about the showing that the state must make to substantially burden an individual's free exercise of religion.  Specifically, the Court held that the strict scrutiny standard applied.  374 U.S. at 407-08.  That standard was subsequently overruled in *Employment Division v. Smith*, 494 U.S. 872 (1990).  And that overruling prompted the creation of the Religious Freedom Restoration Act of 1993.  See 42 U.S.C. § 2000bb.  In any event, nothing in *Sherbert* or its progeny provides any support for Plaintiffs' contention that this Court may adjudicate whether the Church's teachings and practices are consistent with the Book of Mormon.

-6-

members of a socially conscious community group that was *not* a religion or even religiously affiliated. *Id.* at 50. Through this false representation, the plaintiffs were convinced to join a commune where they were "brainwashed" into joining the Unification Church. *Id.* at 53-54.

The court allowed the plaintiffs' fraud claim to proceed. Specifically, it allowed a claim based on the Unification "Church's practice of misrepresenting or concealing its identity" and noted that such a claim was *not* a challenge "to the Church's teachings." *Id.* at 59. The allegedly fraudulent statement at issue was purely secular—were the individuals who approached the plaintiffs associated with the Unification Church? Indeed, the statement was *intentionally* secular, and its purpose was to disclaim any affiliation with religion. Adjudicating that question did not require interpreting, weighing, or opining on any religious doctrine. In short, *Molko* stands for the unremarkable proposition that a religious organization may be held liable if it misrepresents its identity as a religious organization.

Plaintiffs' legal theories would eviscerate the Religion Clauses of the First Amendment. Under Plaintiffs' theories, this Court can interpret and opine on the true meaning of the Church's scripture and prohibit the Church from preaching any religious doctrine with which the Court disagrees. By the same reasoning, a Presbyterian Church could, for example, sue the Roman Catholic Church for fraud

for failing to follow the "true" teachings of the Bible (at least as they are understood by Presbyterians).  The Roman Catholic Church could, of course, make the same counterclaim.  And the Court would then need to decide which church, if any, properly complies with biblical teachings.  Plaintiffs' legal theory would then have the Court enjoin any other church from preaching that it follows the Bible.  It is difficult to imagine a more dramatic violation of both the Free Exercise Clause and the Establishment Clause.  Simply put, the Supreme Court has correctly held (for over a century) that courts have absolutely no business in resolving disagreements over religious doctrines.  Accordingly, Plaintiffs' claims are barred and should be dismissed.

## CONCLUSION

Plaintiffs' Complaint fails to state a claim.  Their claims are plainly forbidden by the First Amendment.  The Complaint should be dismissed with prejudice.

DATED: March 17, 2020.

        STOEL RIVES LLP

        */s/ David J. Jordan*
        David J. Jordan
        Wesley F. Harward

        *Attorneys for Defendant Corporation of the President of The Church of Jesus Christ of Latter-day Saints*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of March 2020, a copy of the foregoing **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** was served, via U.S. Mail on the following:

Lynnette Cook
228 W. Garden Pk
Orem, UT  84057

Julie Little Taggart
225 S. 300 E. #507
Salt Lake City, UT  84111

Rodney Jay Vessels
230 W. Garden Pk
Orem, UT  84057

*/s/ Stacy Kamaya*